<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| HUNTER DOUGLAS NORTH AMERICA, INC., and WF TECHNOLOGIES, INC., | : : : : | |
| Plaintiffs, | : : | Civil Action No. 06-616 (JAG) |
| v. | : : : | **OPINION** |
| HT WINDOW FASHIONS CORP., ABC CORP. (1-10), JOHN DOES (1-10), and JANE DOES (1-10), | : : : : | |
| Defendants. | : | |

<u>**GREENAWAY, JR., U.S.D.J.**</u>

This matter comes before the Court on the motion for a preliminary injunction by Plaintiffs Hunter Douglas North America, Inc. and WF Technologies, Inc. (collectively "Plaintiffs"), seeking to enjoin Defendant HT Window Fashions Corp. ("HT") from conduct that infringes U. S. Patent No. 5,787,951 (filed Oct. 22, 1996) (the "'951 patent"). For the reasons set forth below, the motion for a preliminary injunction is denied.

## BACKGROUND

Plaintiff WF Technologies, Inc. owns all rights in the '951 patent, which is directed to a type of window shade called a "roman shade." Plaintiffs WF Technologies, Inc. and Hunter Douglas North America, Inc. are wholly-owned subsidiaries of a common parent company, Hunter Douglas, Inc. Defendant HT manufactures a line of window shade products known under the name "Blossom Roman Shades." Plaintiffs allege that two shades from this line, the Fantasy

Folded and the Fantasy Flat (collectively, "the BR Shades"), infringe the '951 patent. For purposes of this motion for a preliminary injunction, Plaintiffs assert only claims 1 and 7 of the '951 patent.

## APPLICABLE LEGAL STANDARDS

### I. Preliminary injunction

As the moving party, a plaintiff "is entitled to a preliminary injunction if it shows: (1) a reasonable likelihood of success on the merits of its claims; (2) irreparable harm if an injunction is not granted; (3) a balance of hardships tipping in its favor; and (4) the injunction's favorable impact on the public interest." Gillette Co. v. Energizer Holdings, Inc., 405 F.3d 1367, 1370 (Fed. Cir. 2005). In order to demonstrate a likelihood of success on the merits on a particular claim of patent infringement, Plaintiffs must show that, in light of the presumptions and burdens that will inhere at a trial on the merits, (1) Defendants likely infringe the patent, and (2) the claims of the patent will likely withstand Defendants' challenges to validity. Id. If Defendants "raise[] a substantial question concerning either infringement or validity, *i.e.*, assert[] an infringement or invalidity defense that the patentee cannot prove 'lacks substantial merit,' the preliminary injunction should not issue." Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1350-1351 (Fed. Cir. 2001). Thus, once the non-movant has raised a substantial question as to infringement or validity, for the preliminary injunction to issue, the movant must prove that this question lacks substantial merit.

"[I]nfringement and validity analyses must be performed on a claim-by-claim basis." Id. at 1351. "[I]n cases involving multiple patent claims, to demonstrate a likelihood of success on the merits, the patentee must demonstrate that it will likely prove infringement of one or more

claims of the patents-in-suit, and that at least one of those same allegedly infringed claims will also likely withstand the validity challenges presented by the accused infringer." Id.

**II.      Infringement**

The test for patent infringement requires a two step analysis: "the claim scope is first determined, and then the properly construed claim is compared with the accused device to determine whether all of the claim limitations are present either literally or by a substantial equivalent." Id. "To prove direct infringement, the plaintiff must establish by a preponderance of the evidence that one or more claims of the patent read on the accused device literally or under the doctrine of equivalents." Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc., 424 F.3d 1293, 1310 (Fed. Cir. 2005). "Literal infringement of a claim occurs when every limitation recited in the claim appears in the accused device, i.e., when the properly construed claim reads on the accused device exactly." Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co., 425 F.3d 1366, 1373 (Fed. Cir. 2005) (quoting KCJ Corp. v. Kinetic Concepts, Inc., 223 F.3d 1351, 1358 (Fed. Cir. 2000)). Although claim construction is an issue of law, the determination of infringement is a question of fact. Pause Tech. LLC v. TiVo Inc., 419 F.3d 1326, 1329 (Fed. Cir. 2005).

**III.     Claim construction**

The Court decides claim construction as a matter of law: "the construction of a patent, including terms of art within its claim, is exclusively within the province of the court." Markman v. Westview Instruments, 517 U.S. 370, 372 (1996). "To ascertain the meaning of claims, we consider three sources: the claims, the specification, and the prosecution history." Markman v. Westview Instruments, 52 F.3d 967, 979 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996) (citations

3

omitted). "[T]he words of a claim are generally given their ordinary and customary meaning." Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005).

## ANALYSIS

**I.  Plaintiffs have not demonstrated a likelihood of success in establishing that HT has literally infringed the '951 patent.**

Plaintiffs assert that the BR Shades literally infringe claims 1 and 7 of the '951 patent. HT has raised substantial questions as to the presence of several of the claim elements in the accused devices.

    A.    <u>Do the accused devices have a rear sheet?</u>

Plaintiffs contend that the "rear sheet" limitation in claims 1 and 7 is met by a cord HT calls the "securement cord." In the samples of the BR Shades that both parties brought to the hearing, this cord appeared as an ordinary braided cord, divided into two at a number of points to allow plastic loops[1] to pass through. The parties did not dispute that the question of literal infringement of the rear sheet limitation turns on a matter of claim construction: did the inventor understand the claim term "sheet" to include a cord?

Plaintiffs argue that this question must be answered in the affirmative, but there are two significant weaknesses in this position. First, Plaintiffs' claim construction argument is very problematic. Second, Plaintiffs have submitted an expert report that undermines their position.

    *1.    Claim construction of "rear sheet"*

Plaintiffs contend that a cord comes within the scope of the claim term "rear sheet," and that the inventor used them interchangeably. There are multiple problems with this argument.

---

[1] These loops attached the front sheets to the securement cord.

First, it is contrary to the ordinary understanding of the words "sheet" and "cord," which are not synonyms or interchangeable in ordinary usage. Second, it is contrary to the claim language, which appears to reflect this ordinary understanding: the inventor uses the words "sheet" and "cord" within both claims to refer to distinctly different, non-interchangeable elements. Lastly, Plaintiffs rely heavily on an argument based on the specification, which does not support their position.

Both claims 1 and 7 use the words "sheet" and "cord" in multiple places. The device includes a "rear sheet" and a "plurality of front sheets," as well as a "raising cord" and an "opening cord." The claims specify various ways in which the sheets and the cords are related.

The claim language indicates that the inventor understood sheets to be different from cords. They do not appear to be interchangeable. Most obviously, the cord elements have control functions for the shade (raising and opening) while the sheets do not. If the terms were truly interchangeable, one should be able to swap them in the claim with no ill effect on comprehensibility. Swapping them, however, makes the language very confusing.

The claim language further distinguishes sheets from cords in requiring that the rear sheet must have at least two faces. Claim 1 specifies both that the "raising cord extend[s] along a face of said rear sheet" and that the "front sheets hav[e] an attachment that attaches to a front face of said rear sheet." '951 Patent col.22 ll.19-24. In order for "front" in "front face" to have meaning, it must distinguish that face from others, and so a sheet must have at least two faces. The question of how a cord can have two faces poses a real hurdle to Plaintiffs, and they were unable to overcome it. Plaintiffs argue that the front face of the rear sheet is wherever the front sheet attaches to it, but this is a circular definition, since the front sheet attaches to the front face

5

of the rear sheet, defined as wherever the attachment attaches. Plaintiffs' position renders "front face" meaningless.[2] This problem alone poses a substantial question as to Plaintiffs' claim construction, and Plaintiffs were unable to show that the question had no merit.

In addition, at the hearing, both parties brought in samples of the BR Shades in which the front sheet attached to the purported rear sheet via a plastic loop that passed through an opening in the middle of the cord. In other words, at the point of intersection with the plastic connecting loop, the cord split into two, rejoining after creating an opening for the plastic loop to go through. Thus, Plaintiffs propose that the "front face" of the rear sheet is an opening in the middle of the cord. This construction is unreasonable: when one element passes through the middle of another, the phrase "front face" does not reasonably identify that middle location.

Similarly, claim 1 requires "a raising cord extending along a face of said rear sheet." '951 Patent col.22 l.19. It is difficult to comprehend how this could be meaningful if the sheet is a cord, since the statement that one cord extends along the face of another cord gives no meaningful information that locates where the two cords touch. Plaintiffs' proposed construction of "rear sheet," then, deprives this claim language of meaning as well.

Plaintiffs' claim construction of "rear sheet" hinges on their argument that the specification shows that the inventor used "sheet" and "cord" as interchangeable terms. This argument has two steps. First, Plaintiffs point to the fifteenth embodiment, shown in Figures 37 and 38, in which the "rear sheet" elements are split into two vertical strips, instead of a continuous piece of material spanning the width and height of the shade, as shown in other

---

[2] Moreover, in performing an infringement analysis, this Court cannot test whether something is attached to the "front face" by defining the "front face" as the place where the thing is attached.

embodiments. '951 Patent col.20 ll.6-15.  Next, Plaintiffs point to Figures 9 and 11, in which the "opening cord" element is drawn as strips.  Id. col.9 ll.58-62.  On this basis, Plaintiffs assert that the inventor used "sheet" and "cord" interchangeably.

This argument is a classic invalid syllogism, and can be stated in this form: 1) sometimes sheets are split into strips; 2) some cords appear as strips when drawn; therefore 3) all cords are sheets.  Defendant's analogy illustrates the invalidity of this argument: 1) judges appear in black robes; 2) graduating students appear in black robes; therefore 3) all graduating students are judges.  (Hr'g Tr. 46, Apr. 24, 2006.)

In addition, the specification presents evidence that the inventor did not equate sheets, strips, and cords.  When describing the use of strips in the fifteenth embodiment, the inventor specifies that the "rear sheet 110 covers only the areas where the opening cords 118, raising cords 124, and insertion extensions 113 are present . . . ."  Id. col.20 ll.12-14.  In this embodiment, the inventor envisioned the strips to serve the function of covering both the cords and the insertion extensions.  The insertion extensions are elements "through which opening cords 118 and raising cords 124 can be passed."  Id. col.16 ll.47-49.  If the cords pass through the insertion extensions, insertion extensions must be wider than opening and raising cords.  Since the rear sheet must cover the insertion extensions, it must be wider than the opening and raising cords.  This does not support Plaintiffs' argument that the inventor understood sheets, strips, and cords to be interchangeable.

Plaintiffs' position is also unreasonable because, after arguing that the inventor used "sheet" and "cord" interchangeably, Plaintiffs contended that this only applied to the rear sheet: the front sheet could not be a cord.  (Hr'g Tr. 44, 45, Apr. 24, 2006.)  These positions are

7

inconsistent. If cords can be sheets, this should hold true for front sheets as well as rear sheets. Plaintiffs' argument that the sheet/cord equivalence holds only for rear sheets effectively undermines their position.

Juxtaposing the proposed construction of "rear sheet" with constructions proposed for other claim terms, discussed below, the contortions required to accommodate all the terms together are overwhelming. Plaintiffs propose that: 1) a sheet may be a cord if it is a rear sheet, but a front sheet may not be a cord (Id.); 2) the fabric panel at top that looks like a front sheet is not a sheet but part of the headrail (Id. at 29); and 3) the fabric panel at the bottom that looks like a front sheet is not a sheet but part of the ballast bar (Id. at 14). Thus, the inventor's concept of "sheet" must be sufficiently flexible to encompass fabric, cords and strips, but must exclude cords when they are front sheets, as well as fabric attached to headrails and ballast bars. Suffice it to say that Plaintiffs have not shown a likelihood of success in establishing this claim construction of "sheet."

Moreover, the argument fails not only as a matter of logic, but also as a matter of patent law. Defendants aptly cited Merck & Co. v. Teva Pharms. USA, Inc., 395 F.3d 1364, 1370 (Fed. Cir. 2005) (citations omitted):

> When a patentee acts as his own lexicographer in redefining the meaning of particular claim terms away from their ordinary meaning, he must clearly express that intent in the written description. We have repeatedly emphasized that the statement in the specification must have sufficient clarity to put one reasonably skilled in the art on notice that the inventor intended to redefine the claim term.

In Merck, the court held that an ambiguous phrase in the specification did not have clarity sufficient to overcome the presumption of ordinary meaning, and did not justify adopting the

8

proposed "counterintuitive" meaning of the term.[3] Id.  Similarly, in the instant matter, Plaintiffs attempt to justify a counterintuitive meaning of "sheet" through ambiguous words and drawings in the specification.  The words and drawings cited do not have clarity sufficient to put one reasonably skilled in the art on notice that the inventor intended to redefine the claim term.

Moreover, since Plaintiffs have not persuaded this Court that the inventor understood sheet, strip, and cord to be interchangeable words, their specification argument appears to ask this Court to use the specification improperly to broaden the scope of the claim.  Chisum terms this use of the specification to expand the claim language "reading limitations out of a claim." 5A-18 DONALD S. CHISUM, CHISUM ON PATENTS (2006) § 18.03.  The Federal Circuit has stated that the specification may not be used in this manner:

> The statute requires that an inventor particularly point out and distinctly claim the subject matter of his invention. 35 U.S.C. § 112 (1988).  It would run counter to this statutory provision for an applicant for patent to expressly state throughout his specification and in his claims that his invention includes right angle corner border pieces and then be allowed to avoid that claim limitation in a later infringement suit by pointing to one paragraph in his specification stating an alternative that lacks that limitation, and thus interpret the claim contrary to its plain meaning. Such a result would encourage an applicant to escape examination of a more broadly-claimed invention by filing narrow claims and then, after grant,

---

[3] The district court had pointed to this language in the specification:

Because of the mixed nomenclature currently in use by those or [sic] ordinary skill in the art, reference to a specific weight or percentage of bisphosphonate compound in the present invention is on an active weight basis unless otherwise indicated herein. For example the phrase "about 70 mg of bone resorption inhibiting bisphosphonate selected from the group consisting of alendronate, pharmaceutically acceptable salts thereof and mixtures thereof, on an alendronic acid weight basis" means that the amount of bisphosphonate compound selected is calculated based on 70 mg of alendronic acid.

Id. at 1369.  The Federal Circuit found this language to be ambiguous and held that it "fails to redefine 'about' to mean 'exactly' in clear enough terms."  Id. at 1370.

>asserting a broader scope of the claims based on a statement in the specification of an alternative never presented in the claims for examination.

Unique Concepts, Inc. v. Brown, 939 F.2d 1558, 1562 (Fed. Cir. 1991). See also Novo Nordisk of N. Am., Inc. v. Genentech, Inc., 77 F.3d 1364, 1369 (Fed. Cir. 1996) ("While claims are to be interpreted in light of the specification, all that appears in the specification is not necessarily within the scope of the claims and thus entitled to protection. What is not claimed, even though disclosed as part of the 'invention,' cannot be enjoined.").

In the instant case, having filed narrowly-defined claims, Plaintiffs appear to ask this Court to broaden the claim scope based on an alternative in the specification. Under Federal Circuit law, this Court must not do so. Furthermore, Plaintiffs' argument that the specification may be used to bring strips and cords within the scope of sheets is questionable on another ground. It is well-settled that subject-matter that is disclosed but not claimed is dedicated to the public. Johnson & Johnston Assocs. v. R.E. Serv. Co., 285 F.3d 1046, 1051 (Fed. Cir. 2002). Were subsequent claim construction to show that strips are disclosed but not claimed, Plaintiffs' assertion that cords and strips are interchangeable could require finding that use of cords as rear sheets has been dedicated to the public, and so such cords cannot be within the scope of the claim language.

       *2.  Does the BR Shade literally infringe the "rear sheet" limitation?*

The report submitted by Plaintiffs' expert, Richard N. Anderson, undermines their claim of literal infringement. Mr. Anderson compares the BR Shades to the patented device, element by element. He finds a number of the claimed elements to be present in the BR Shades. As to the rear sheet, however, his language is equivocal, and he does not state that he finds the rear

sheet in the BR Shades exactly.  Rather, he states: "The Samples examined have a rear sheet *in the form of* support cords." (Anderson Cert. ¶ 17) (italics added).  Anderson does then state that "there is no difference between the strips 110 of the '951 patent and the support cords used in the Samples." (Id.)  Yet his infringement summary charts do not support finding literal infringement.  The charts state, as to the rear sheet element: "The [BR] shade has support cords connecting the head rail to the ballast bar.  The support cords are the mechanical equivalent of strips, which are one form that may be taken by the rear sheet." (Id. Ex. C.)  In the charts summarizing his infringement analysis, Anderson goes no further than to state that the support cords are the mechanical equivalent of the rear sheets.

At the hearing, Plaintiffs contended that Anderson was not using the word "equivalent" in "the patent context." (Hr'g Tr. 52, Apr. 24, 2006.)  Yet Anderson unambiguously defines the word in his certification: "An 'equivalent' is something that is insubstantially different from the pertinent limitation . . ." (Anderson Cert. ¶ 6.)  Thus, his characterization of a cord as the "equivalent" of a strip is, by his own stated definition, a statement that they are different.  Plaintiffs' expert's opinion – going to the factual question of infringement, not any issue of law – undermines their claim that the support cords are rear sheets.  This Court finds that it constitutes an admission that, in the context of this infringement analysis, the cords are different from sheets.  It may support an argument for infringement under the doctrine of equivalents, but Plaintiffs have not made this argument.

At the hearing, Plaintiffs asserted that the support cords literally infringe the "rear sheet" limitation, but their briefs are more cautious.   In their opening brief, Plaintiffs argue that very narrow vertical strips are "tantamount" to cords. (Pl. Mem. of L. 8.)  Plaintiffs also tried to make

11

much of the fact that, in a later prosecution of a different patent, the examiner stated that the vertical strips in the '951 patent are the "full mechanical equivalent of the cord."[4] (Anderson Cert. ¶¶ 22, 23.) Even if this Court considered this to be relevant – which it does not – it would be relevant only to infringement under the doctrine of equivalents, not literal infringement.

Lastly, Plaintiffs contend in their brief that the strips in the '951 figures are "just like the HT cords." (Pl. Mem. of L. 11.) This Court finds this to be essentially an admission that the cords do not literally infringe but, rather, at best, are no more than "just like" the claimed element. This is insufficient to support a finding of literal infringement. Because Plaintiffs have not argued infringement under the doctrine of equivalents, they have failed to demonstrate a likelihood of success in showing literal infringement.

B.   Infringement of other claim elements

The analysis of the "rear sheet" limitation shows that Plaintiffs have not established a likelihood of success in proving literal infringement. Defendants raised substantial questions as to infringement of two other claim elements as well, involving the topmost front sheet, and the bottommost front sheet. These issues will be addressed only briefly.

Both claims 1 and 7 require that every front sheet have "an attachment that attaches to a front face of said rear sheet." '951 Patent col.22 ll.23-24, ll.66-67. The parties do not dispute that the topmost fabric panel of the BR Shades does not have an attachment that attaches to the

---

[4] This argument works against Plaintiffs, supporting a claim for infringement under the doctrine of equivalents, not a claim for literal infringement. As noted, the prosecution history of an unrelated patent is legally irrelevant but, to the extent that the Court were to consider it, the examiner's use of the phrase "full mechanical equivalent" strongly suggests that the examiner did not see literal identity of elements: the use of "mechanical" to qualify "equivalent" indicates that the examiner did not see a strip and a cord to be even fully equivalent, no less exactly the same.

purported rear sheet. Plaintiffs argue that the topmost fabric panel is not a front sheet, but rather a valance that is part of the headrail. (Hr'g Tr. 29, Apr. 24, 2006.) Plaintiffs' expert, Richard N. Anderson, submitted four photographs in which he identified the parts of the BR Shades. (Anderson Cert. Ex. C.) In every photograph, he identified the topmost fabric panel as a front sheet. (Id.) At the hearing, Plaintiffs asserted that this was merely a clerical error. (Hr'g Tr. 30, Apr. 24, 2006.)

To the casual observer, in the samples both parties brought to the hearing, the topmost fabric panel looks very similar to all the front sheets. The fabric loops up at the bottom of the panel, just like the front sheets, and the bottom moves in synchrony with the bottoms of all the front sheets as they are open and shut. At the very least, to persuade that this is not a front sheet but a part of the headrail, Plaintiffs need to offer a definition of "front sheet" that includes the fabric panels hanging below but excludes the topmost panel. Plaintiffs have not offered any such definition, nor did they offer anything to justify their position that the topmost panel is not a front sheet beyond saying that it is not one.

Claim 1 requires that both the rear sheet and the raising cord be connected to the ballast bar. The parties do not dispute that the purported rear sheet and the raising cord of the BR Shades connect to the bottommost fabric panel, which is connected to the ballast bar, rather than to the weight bar itself. Plaintiffs argue that the bottommost fabric panel is not a front sheet, but rather is part of the ballast bar.[5] Plaintiffs' expert, Richard N. Anderson, submitted two

---

[5] At oral argument, Plaintiffs argued that the fabric panel could either be a part of the rear sheet or part of the ballast bar. (Apr. 24, 2006 Hr'g Tr. 11.) After the Court questioned the persuasiveness of this definition by alternatives, Plaintiffs settled on contending that the panel is part of the ballast bar. (Id. at 14.)

photographs in which he identified the parts of the BR Shades corresponding to the elements of claim 1. (Anderson Cert. Ex. C.) In both photographs, he identified the weight bar at the bottom of the shade as the ballast bar. (Id.) His exhibits do not indicate that the ballast bar consists of the weight bar together with the attached fabric panel. (Id.)

As above, Plaintiffs have proposed no construction for the claim term "ballast bar," nor offered argument or support for their contention that the term should be construed to include both a weight bar and a piece of fabric attached to it. Again, at the very least, Plaintiffs must offer a claim construction argument on this issue in order to show a likelihood of success in proving infringement of this claim limitation, and they have not done so. Rather, by indifferently asserting alternative definitions at the hearing, Plaintiffs showed that they have not yet developed a claim construction for "ballast bar." Lacking a proposed construction, this Court cannot conclude that Plaintiffs are likely to succeed in proving infringement of the "ballast bar" limitation.

Moreover, the language of the patent suggests that it may be difficult to persuade that a ballast bar includes an attached piece of fabric. The first sentence of the abstract states that the rear sheet "is weighted at the bottom by a ballast bar." This suggests that the ballast bar is a weight, rather than a weight-and-fabric combination. Figures 6, 7, and 8 show the ballast bar as an unsegmented unit, not as a combination of a weight and fabric. In fact, in every figure in the patent in which the ballast bar is identified, it looks like a unitary bar.

Plaintiffs have not shown that these substantial questions regarding infringement have no merit.

**CONCLUSION**

Plaintiffs claimed to be proceeding under a theory of literal infringement, but their arguments and expert support generally reflect concepts of equivalence.  There is little support for a case of literal infringement here.  Plaintiffs' claim construction arguments are incomplete and problematic.

To show an overall likelihood of success on the merits, Plaintiffs needed to show a likelihood of success in defending at least one of the two claims from Defendants' challenges to infringement and validity.  Defendants raised substantial questions as to the infringement of both claims 1 and 7, which Plaintiffs did not show lacked substantial merit.  Because Plaintiffs have not shown an overall likelihood of success on the merits, this Court need not address the other factors in the preliminary injunction analysis.  For the reasons stated above, Plaintiffs' motion seeking issuance of a preliminary injunction is denied.


   S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.


Dated: May 10, 2006